UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE on behalf of herself and her minor child SARAH DOE,<br><br>Plaintiff,<br><br>vs.<br><br>FRANKLIN SQUARE UNION FREE SCHOOL DISTRICT, and HOWARD ZUCKER, in his official capacity as Commissioner of the New York State Department of Health,<br><br>Defendants. | Docket No. 21-CV-5012<br>(FB)(SIL)<br><br>**DECLARATION OF CHELSEA WEISBORD** |

CHELSEA WEISBORD, an attorney duly admitted to practice in the State of New York, declares the following to be true, under penalty of perjury:

1.  I am associate of the law firm SOKOLOFF STERN LLP, counsel for defendant Franklin Square Union Free School District (the "District") in the above-captioned action. As such, based upon my review of District records, I am fully familiar with the facts and circumstances set forth herein.

2.  I submit this declaration in opposition to plaintiff's motion for a preliminary injunction.

### STATEMENT OF FACTS

**A. New York State's Response to the Covid-19 Pandemic**

3.  On or about March 7, 2020, then-New York Governor Andrew Cuomo issued Executive Order No. 202 which declared "a State disaster emergency for the entire State of New York." (A Copy of Executive Order No. 202 is attached as Exhibit A.)

4. On March 16, 2020, Governor Cuomo issued Executive Order 202.4 in which he ordered all schools to close no later than March 18, 2020. (A copy of Executive Order No. 202.4 is attached as Exhibit B.) Through various subsequent Executive Orders, Governor Cuomo extended the closure of school facilities and in-person instruction through the remainder of the 2019-2020 school year. (*See* page 7 of Exhibit C, which is a document released by the New York State Department of Health ("NYSDOH") entitled, "*Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools During the Covid-19 Public Health Emergency*" and dated August 26, 2020).

5. On August 26, 2020, the NYSDOH released "*Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools During the COVID-19 Public Health Emergency*" ("Interim Guidance"). (Ex. C.) The stated purpose for the Interim Guidance was to "provide all elementary (including pre-kindergarten), middle, and high schools, as well as their employees, contractors, students, and parents/legal guardians of students with precautions to help protect against the spread of COVID-19 for schools that are authorized to provide in-person instruction in the 2020-2021 school year." (*Id.*, p. 1.)

6. The Interim Guidance required schools to develop individual plans for reopening and operating during the COVID-19 public health emergency and submit those plans to the NYSDOH and the New York State Education Department ("NYSED"). (*Id.*) The Interim Guidance set forth a list of minimum standards, or requirements, for such plans. One of these requirements was that schools "must maintain protocols and procedures for students, faculty, staff, and other individuals to ensure appropriate personal protective equipment (PPE) is used to protect against the transmission of the COVID-19 virus when on school grounds and in school facilities."

(*Id.*, pp. 1-2; *see also* pp. 4, 10-11, 14-15.) The Interim Guidance further explained, "These guidelines are based on the best-known public health practices at the time of publication." (*Id.*)

7. On September 4, 2020, Governor Cuomo issued Executive Order 202.60 in which he authorized "schools statewide to be open for instruction, effective September 1, 2020, subject to adherence to Department of Health issued guidance and directives." (Attached as Exhibit D is a copy of Executive Order No. 202.60.)

8. On April 9, 2021, the NYSDOH issued an update to its August 26, 2020 Interim Guidance for the purpose of aligning the Interim Guidance with the most recent recommendations from the Centers for Disease Control and Prevention ("CDC"). (*See* page 1 of Exhibit E, which is a document released by the NYSDOH entitled, "*Interim Guidance for In-Person instruction at Pre-K to Grade 12 Schools During the Covid-19 Public Health Emergency*" and dated April 9, 2021.) This updated Interim Guidance still required schools to create a plan to meet certain minimum criteria. (Ex. E, p. 1.) Such plans must be presented to parents, community members, teachers, staff, and local health departments for feedback and posted online. (*Id.*) This updated Interim Guidance continues the requirement that face coverings be worn when on school grounds and in school facilities except during meals. (*Id.*, pp. 2, 4, 9.)

9. As of May 15, 2021, the CDC still recommended that schools continue using certain COVID-19 prevention strategies for the 2020-2021 school year—including the use of masks. (Attached as Exhibit F is a copy of CDC's recommendations regarding the operational strategy for K-12 schools through phased prevention which was updated May 15, 2021.) The CDC recommended, "All schools should implement and lay prevention strategies and should prioritize universal and correct use of masks and physical distancing." (*Id.*, p. 1.) In a section of the CDC

3

recommendations entitled "*Universal and correct use of masks*," the CDC recommended the following:

> **Core Principle for masks:** Require consistent and correct use of well-fitting face masks with proper filtration by all students, teachers, and staff to prevent SARS-CoV-2 transmission through respiratory droplets. Masks should be worn at all times, by all people in school facilities, with certain exceptions for certain people, or for certain settings or activities, such as while eating or drinking. Masks should be required in all classroom and non-classroom settings including hallways, school offices, restrooms, gyms, auditoriums, etc.

(*Id.*, p. 3.)

10. The CDC recommendations continued with:

> Most students, including those with disabilities, can tolerate and safely wear a mask. However, a narrow subset of students with disabilities might not be able to wear a mask or cannot safely wear a mask. Those who cannot safely wear a mask—for example, a person with a disability who, for reasons related to the disability, would be physically unable to remove a mask without assistance if breathing becomes obstructed—should not be required to wear one. For the remaining portion of the subset, schools should make individualized determinations as required by Federal disability laws in order to determine if an exception to the mask requirement is necessary and appropriate for a particular student. If a child with a disability cannot wear a mask, maintain physical distance, or adhere to other public health requirements, the student is still entitled to an appropriate education, which in some circumstances may need to be provided virtually.

(*Id.*, pp. 3-4.)

11. On June 7, 2021, the NYSDOH issued another update to its August 26, 2020 Interim Guidance to align it with the most recent recommendations from the CDC. (*See* page 1 of Exhibit G, which is a document released by the NYSDOH entitled, "*Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools During the Covid-19 Public Health Emergency*" and dated June 7, 2021.) This updated Interim Guidance still required schools to create a plan that meets certain minimum criteria. (Ex. G, p. 1.) Such plans must be presented to parents, community members, teachers, staff, and local health departments for feedback and posted online. (*Id.*) This

updated Interim Guidance no longer required face coverings to be worn outdoors on school grounds, including during outdoor school sports, but still mandated schools to maintain protocols and procedures that require students, faculty, staff, and other individuals to wear face coverings when in indoor school facilities, except for meals. (*Id.*, pp. 2, 4, 9.)

12. On June 25, 2021, Governor Cuomo issued Executive Order No. 202.10 that officially ended the State disaster emergency he had declared back on March 7, 2020. (Attached as Exhibit H is a copy of Executive Order No. 202.10.)

13. On August 5, 2021, in response to new evidence on the Delta Covid-19 Variant, the CDC published an updated "*Guidance for Covid-19 in K-12 Schools*." (*See* page 1 of Exhibit I, which is a copy of a document published by the CDC which is entitled "*Guidance for Covid-19 in K-12 Schools*" and was updated August 5, 2021.) This CDC guidance was "updated to recommend universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status." *(Id.*, p. 1.)

14. On August 24, 2021, Kathy Hochul was sworn in as the Governor of New York. She then announced a mask mandate will be in effect from the NYSDOH for the beginning of the 2021-2022 school year. (*See* ¶ 16 of the Affidavit of Superintendent Dr. Jared Bloom, a copy of which is attached as Exhibit W ("Bloom Aff."))

15. And on August 27, 2021, NYSDOH Commissioner Howard Zucker issued a "*Commissioner's Determination on Indoor Masking Pursuant to 10 NYCRR 2.61*." (Attached as Exhibit J is a copy of the "*Commissioner's Determination on Indoor Masking* Pursuant to 10 NYCRR 2.61," issued on August 27, 2021.) (*See also* Bloom Aff., ¶ 16.)

16. This Commissioner's Determination imposes a face covering requirement in various settings including P-12 school settings. (Ex. J.) It provides:

> After careful review and consideration of CDC recommendations for face coverings/masks in school settings, I hereby adopt such recommendations, imposing them as requirements, where applicable, until this determination is modified or rescinded. Accordingly, universal masking of teachers, staff, students, and visitors to P-12 schools over age two and able to medically tolerate a face covering/mask and regardless of vaccination status, is required until this determination is modified or rescinded. Such requirement is subject to applicable CDC-recommended exceptions.

(*Id.* at p. 2.)

17. In his Determination, the Commissioner indicates he also relied on guidance from the American Academy of Pediatrics which is consistent with the CDC's recommendations. (*Id.* at n. 2.)

18. The Commissioner's Determination also sets forth the "findings of necessity" to support the NYSDOH's decision to impose a face covering requirement. (*Id.*, p. 1.) As explained in the Determination, the primary reason for imposing a mask requirement for the 2021-2022 school year is to combat the spread of the Delta COVID-10 variant which "is approximately twice as transmissible as the SARS-CoV-2 strain." (*Id.*)

19. On September 2, 2021, the NYSDOH issued an "*Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year*" ("the Interim NYSDOH Guidance"). (Attached as Exhibit K is a copy of a document released by the NYSDOH entitled "*Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year*" and dated September 2, 2021.) (*See also* Bloom Aff., ¶ 17.)

20. The Interim NYSDOH Guidance references the regulatory requirements and associated Commissioner's determinations for masking, COVID-19 testing, and reporting in school settings. (Ex. K, p. 1.)

21. The Interim NYSDOH Guidance makes clear that pursuant to the Commissioner's Determination (referenced above), "all students, personnel, teachers, administrators, contractors,

and visitors must wear masks at all times indoors, regardless of vaccination status." (*Id.*, p. 2.) The Interim NYSDOH Guidance, however, clarifies "[p]eople with medical or developmental conditions that prevent them from wearing a mask may be exempted from mask requirements, as documented by a medical doctor. (*Id.*) Additionally, individuals are not required to wear a mask when eating, drinking, singing, or playing a wind instrument, but must practice social distancing (i.e., be spaced six feet apart) when removing their masks for such activities. (*Id.*) The face covering requirement for the 2021-2022 school year does not apply to outdoor play, recess, or physical education activities. (*Id.* at p. 4.)

### B. The District's Compliance with State-Mandated Guidelines and Regulations

22. In September of 2020, the District reopened its doors for in-person instruction. (Bloom Aff., ¶ 2.) As required by the NYSDOH guidelines, the District implemented a reopening plan which included protocol and procedures for requiring students, faculty, staff, and other individuals to wear face coverings while in school or on school property. (A copy of the District's Fall 2020 re-entry plan is attached as Exhibit L.) (*See also* Bloom Aff., ¶ 2) The challenges of imposing a face covering requirement did not go unnoticed. As the District stressed in its re-opening plan, "We understand that this will be challenging for all students, including our youngest learners; therefore, frequent mask breaks will be provided throughout the day." (Ex. L, pp. 5-6.) Students in Sarah Doe's age bracket were also given the option to continue remote learning. (*Id.*, p. 6; *see also* ¶ 4 of the Affidavit of District Principal Thomas Riccobono, a copy of which is attached as Exhibit X ("Riccobono Aff".))

23. Given that the NYSDOH issued regulatory face covering requirements for the current 2021-2022 school year, the District continues to implement the mask requirement in its school buildings. (Bloom Aff., ¶¶ 16-18.)

24.     As required by the NYSDOH, the District prepared and published a re-entry plan for the 2021-2022 school year that requires all students and adults to wear a mask inside school buildings and on the school bus. (Attached as Exhibit M is a copy of the District's "*Fall Reopening 2.0 Plan 2021-2022*" which is publicly available on the District's website at http://www.franklinsquare.k12.ny.us/2021_fall_reopening/2021_fall_reopening.) The re-entry plan provides:

> Per the Department of Health guidelines, **students and adults must wear a mask at all times inside the buildings (e.g., in classrooms, common areas, and hallways) and on the school bus (e.g., entering, exiting, and seated)**, unless (a) they are medically unable to tolerate one or it would impair their mental health and (b) when eating. Medical documentation is required to qualify for a mask exemption.
>
> **As of June 7, 2021, masks are not required outdoors as long as individuals are maintaining physical distance. Staff, students, and visitors are not required to wear a mask outdoors.**

(Ex. M, p. 17 (emphasis in original).)

25.     Under this re-entry plan, structured mask breaks will be provided to allow students to remove their masks throughout the day, during snack and lunch, while singing or playing a wind instrument, and all outdoor activities. Teachers are required to provide additional mask breaks as needed. (Bloom Aff., ¶ 18; *see also* Ex. M, p. 17.)

26.     The District's Board of Education did not convene to address the issue of masks since the NYSDOH put a mandate in place. Should the NYSDOH provide an option to school districts, the Board and the District's Re-Entry Committee will review the issue and make a determination. (Bloom Aff., ¶ 19.)

### C. Plaintiff's Allegations Regarding Her Daughter

27.     Sarah Doe ("Sarah") is a sixth-grade student at the John Street School, which is an elementary school in the District. (Bloom Aff., ¶ 3; Riccobono Aff., ¶1.) Last year, Sarah was in

n/a
n/a

fifth grade and attended school in person where she was required to wear a face mask. (Bloom Aff., ¶ 4; Riccobono Aff., ¶ 2.)

28.   At the start of the 2020-2021 school year, parents had the option to send their children to John Street School for in-person instruction or continue virtual learning. (Riccobono Aff., ¶ 4.) Plaintiff chose in-person instruction for her daughter. (*Id.*) Accordingly, Sarah was required to comply with the face covering requirement. (*Id.*)

29.   On April 27, 2021, District Superintendent of Schools Dr. Jared Bloom received a doctor's note from Sarah's treating physician, Steven Kellner. (Bloom Aff., ¶ 5.) The doctor's note indicated that Sarah had been diagnosed with asthma and requested that she be allowed to play sports without a mask as it triggers her wheezing. (Attached as Exhibit N is a copy of this April 12, 2021 doctor's note from Dr. Steven Kellner.) (*See also* Bloom Aff., ¶ 5.)

30.   Superintendent Bloom considered the doctor's note to be a request for a medical exemption from the face mask requirement. (Bloom Aff., ¶ 6.) Accordingly, he forwarded the medical exemption request to the District's Medical Director, Dr. Ronald Marino, to render a medical determination. (*Id.*) This was consistent with the District's procedure regarding medical exemption requests. The District retains a Medical Director to advise the District's administration, Board of Education, and nurses on various medical issues. (*See* ¶ 4 of the Affidavit of Dr. Ronald Marino, a copy of which is attached as Exhibit Y ("Marino Aff.".)) One of the job responsibilities for the District's Medical Direcotr is to review requests for medical exemptions. (*Id.*) In recent times, this has included requests to be exempted from the State-mandated face covering requirement in school buildings. (*Id.*)

31.   Superintendent Bloom sent Dr. Marino a copy of Jane Doe's medical exemption request on the same day he received it: April 27, 2021. (Bloom Aff., ¶ 6; Marino Aff., ¶ 5.)

32. Dr. Marino determined that, under the circumstances, Sarah was not entitled to a complete exemption from the mask requirement. (Marino Aff., ¶ 6; Bloom Aff., ¶ 7.)

33. In making this determination, Dr. Marino consulted materials published by the CDC and American Lung Association which opine that asthma does not constitute a medical contraindication to wearing a mask. (Marino Aff., ¶ 7.)

34. According to the CDC, asthma does not constitute a medical contraindication to wearing a mask. (Marino Aff., ¶¶ 7-9.) In an April 7, 2021 publication, entitled "*People with Moderate to Severe Asthma*," the CDC opined that people with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19. (A copy this April 7, 2021 CDC publication is attached as Exhibit O.) In this publication, the CDC recommended that people with moderate-to-severe or uncontrolled asthma "take steps to protect" themselves. (*Id.*, p. 1.) And according to the CDC, one way they can protect themselves is to "wear a mask" that covers their mouth and nose. (*Id.*)

35. Additionally, on April 19, 2021, the CDC published a document entitled, "*Guidance for Wearing Masks*." (A copy of this April 19, 2021 CDC Guidance is attached Exhibit P.) In this document, the CDC recommended that people 2 years of age and older should wear a mask. (Ex. P, p. 2.) While the CDC recognized individuals with certain disabilities may not be able to wear a mask, the CDC does not consider asthma to be one of those disabilities. (Ex. P, p. 6.) In fact, the CDC opined, "Most people with underlying medical conditions can and should wear masks." (*Id.*) And the CDC specifically stated, "If you have asthma, you can wear a mask." (*Id.*)

36. In making his determination regarding Jane Doe's medical exemption request, Dr. Marino also consulted the school nurse. (Marino Aff., ¶ 10.) Specifically, Dr. Marino asked for

the last date that Sarah visited the nurse complaining of asthma. (*Id.*) He was informed the last time Sarah had visited the nurse complaining of wheezing was in 2017. (*Id.*)

37. Dr. Marino spoke with Dr. Kellner over the phone. (*Id.*) He spoke with Dr. Kellner regarding the CDC guidance. (*Id.*) Dr. Kellner indicated that he had not observed Sarah wheeze from wearing a mask. (*Id.*)

38. Dr. Marino recommended that if Sarah has any difficulty breathing during school, she should visit the nurse's office so a licensed health professional can examine her to determine if she was having an asthma episode. (*Id.*)

39. Dr. Marino notified Superintendent Bloom of his determination that Sarah was not entitled to a complete exemption from the mask requirement. (Marino Aff., ¶ 6; Bloom Aff., ¶ 7.) Superintendent Bloom then called Jane Doe and advised her of Dr. Marino's determination. (Bloom Aff., ¶ 7.)

40. On June 7, 2021, Jane Doe indicated to Superintendent Bloom that if things did not change, she wanted her daughter placed in a remote class. (Bloom Aff., ¶ 8.) That same day, Superintendent responded that he believed remote learning would most likely not be the best option. (*Id.*) Superintendent Bloom felt this way because it was so late in the school year and such a change would adversely affect Sarah Doe's education. (*Id.*) The virtual option was with a different teacher and comprised of synchronous and asynchronous instruction that might not be entirely aligned with the pacing of the in-person instruction. (*Id.*)

41. In June of 2021, Jane Doe submitted a doctor's note from Dr. Kellner and requested a Section 504 meeting for accommodations. (Riccobono Aff., ¶ 6.) The accommodation requested in the doctor's note was that Sarah Doe be placed in a room with air conditioning." (A copy of this

June 7, 2021 doctor's note from Dr. Kellner is attached to as Exhibit Q.) (*See also* Riccobono Aff., ¶ 6.)

42. On June 16, 2021, the District's Section 504 Committee held a virtual determination meeting regarding that request. (Riccobono Aff., ¶ 7.) John Street School Principal Thomas Riccobono, School Psychologist Kathryn Strunk, School Nurse Anna Rapisardi, General Education Teacher Kim Rieger, and plaintiff were all in attendance. (*Id.*) At this determination meeting, there was little, if any, conversation about Jane Doe's air conditioner accommodation request; rather, Jane Doe fixated on the fact that her daughter was being required to wear a mask in school. (*Id.*) The Section 504 Committee determined Sarah did not require Section 504 accommodations at that time. (*Id.*, ¶ 8.)

43. Also on June 16, 2021, attorney Caroline Tucker from the NYC firm Siri & Glimstad LLP sent a letter to Superintendent Bloom. (A copy of this June 16, 2021 letter is attached as Exhibit S.) (*See also* Bloom Aff., ¶ 9.) The letter raised concerns regarding Sarah being required to wear a mask in school, whether she could attend school virtually, and requesting a Section 504 plan providing for an air conditioner in the classroom. (Ex. S; Bloom Aff., ¶ 9.)

44. The June 16th letter indicated that wearing a mask exacerbates Sarah's asthma by requiring more frequent use of prescribed medications and resulting migraines. (Ex. S.)

45. The June 16th letter also referred to CDC guidance stating that masks should not be worn by anyone who has trouble breathing. (*Id.*)

46. On June 18, 2021, District counsel Michael Vigliotta of Volz & Vigliotta, PLLC (formerly Law Offices of Thomas M. Volz, PLLC) responded to the attorney's June 16th letter. (A copy of this June 18 letter is attached as Exhibit T.) (*See also* Bloom Aff., ¶ 10.) In his letter, Mr. Vigliotta addressed each issue raised in the June 16th letter. (*Id.*)

47. Initially, Mr. Vigliotta acknowledged in his June 18th letter that while the CDC guidelines recognize a medical exemption to the mask requirement, CDC guidance also specifically states, "If you have asthma, you can wear a mask." (Ex. T; Bloom Aff., ¶ 11.) He explained in his letter that the District relied on the medical determination of its Medical Director, Dr. Marino, who determined a complete exemption from the mask mandate was not appropriate under the circumstances. (*Id.*) The letter further explained that, despite this determination, the District was still willing to provide other accommodations to Sarah. (*Id.*) Specifically, Sarah could take a mask break upon notifying her teacher during the school day. (*Id.*) She could also be relieved from wearing a mask when socially distanced from the other students in class. (*Id.*) The letter also noted that students did not have to wear masks outdoors. (*Id.*)

48. Regarding the request for virtual instruction, Mr. Vigliotta's letter reiterated Superintendent Bloom's concerns about transitioning Sarah to virtual learning so late in the school year, but indicated that if Sarah wanted to switch to virtual instruction for the few days remaining in the 2020-2021 school year, the District would afford her that accommodation. (Ex. T; Bloom Aff., ¶ 12.) Mr. Vigliotta's letter also explained virtual instruction may not be available for the 2021-2022 school year. (*Id.*) This is because it was the District's intention to return to in-person instruction for all students as soon as possible. (Bloom Aff., ¶ 12.)

49. As for the air conditioner request, Mr. Vigliotta explained in his June 18th letter that it was not feasible to provide one for the few remaining days of the school year, but it would not be a problem to provide one for the following school year. (Ex. T; Bloom Aff., ¶ 13.) Mr. Vigliotta's letter also offered to provide access to a cooling space as needed before then. (*Id.*)

50. Mr. Vigliotta's letter concluded by asking whether the parent wanted the building to reconvene its Section 504 team to meet and discuss accommodations for the 2021/22 school year. (Ex. T.)

51. On August 26, 2021, attorney Sujata Gibson of Gibson Law Firm in Ithaca, NY wrote to Dr. Bloom on behalf of Jane Doe and her family. (A copy of this August 26 letter is attached as Exhibit U.) (*See also* Bloom Aff., ¶ 14.) Attorney Gibson's letter enclosed a doctor's note from Dr. Kellner requesting that Sarah be exempted from having to wear a mask at school because wearing the mask exacerbates her asthma. (A copy of this August 24, 2021 doctor's note from Dr. Kellner is attached as Exhibit R.) In her letter, attorney Gibson threatened to file a lawsuit to "defend [Sarah's] right to a medical exemption." (*Id.*)

52. Dr. Marino was provided with the August 24, 2021 doctor's note from Dr. Kellner requesting that Sarah be exempted from the mask requirement. (Marino Aff., ¶ 13.) Based on the information he had, including the CDC and American Lung Association literature he had previously reviewed, he determined that a complete exemption from the mask requirement was not appropriate under the circumstances. (*Id.*, ¶ 14.)

53. By letter dated September 1, 2021, Mr. Vigliotta responded to Ms. Gibson's letter. (A copy of this September 1, 2021 letter is attached as Exhibit V.) (*See also* Bloom Aff., ¶ 15.) He outlined the interactive process to date, Dr. Marino's review of the accommodation request, and Dr. Marino's determination that a complete exemption from the mask mandate was not appropriate under the circumstances. (Ex. V; Bloom Aff., ¶ 15.) In his letter, Mr. Vigliotta also reminded attorney Gibson that the CDC has found individuals with asthma can tolerate a mask, and he provided a website link to CDC guidance addressing that issue. (*Id.*) Mr. Vigliotta further reiterated that the NYSDOH acted pursuant to its authority to issue regulations to address public health

concerns in connection with communicable diseases. (*Id.*) Finally, Mr. Vigliotta reminded attorney Gibson that the District must abide by the NYSDOH's regulations and failure to do so could result in fines being imposed against the District. (*Id.*)

54. This current school year, Sarah Doe is in an air-conditioned classroom as all sixth-grade classrooms at the John Street School have air conditioning. (Riccobono Aff., ¶ 9.)

## PROCEDURAL HISTORY

55. On September 7, 2021, plaintiff filed this federal complaint in which she sues Howard Zucker, in his official capacity as Commissioner of the NYSDOH, and the Franklin Square Union Free School District. (Dkt. No. 1.)

56. The next day (September 8), plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction ("PI") prohibiting defendants from requiring masks for any student who asserts a medical need to opt out of the school mask policies or regulations, or alternatively, prohibiting defendants from enforcing school mask requirements for Sarah pending resolution of this matter. (Dkt. No. 6.)

57. On September 10, 2021, this Court denied plaintiff's motion for a TRO and set a briefing schedule for the PI motion.

58. The instant opposition is timely as per the Court Order.

Dated: Carle Place, New York
September 20, 2021

**SOKOLOFF STERN LLP**
*Attorneys for Defendant*
*Franklin Square Union Free School District*

By: *Chelsea Weisbord*
    CHELSEA WEISBORD