UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE on behalf of herself and her minor child SARAH DOE,<br><br>Plaintiff,<br><br>vs.<br><br>FRANKLIN SQUARE UNION FREE SCHOOL DISTRICT, and HOWARD ZUCKER, in his official capacity as Commissioner of the New York State Department of Health,<br><br>Defendants. | Docket No. 21-CV-5012<br>(FB)(SIL) |

**MEMORANDUM OF LAW IN SUPPORT OF FRANKLIN SQUARE UNION FREE SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

SOKOLOFF STERN LLP
*Attorneys for Defendant*
*Franklin Square UFSD*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 210142

Of Counsel:
    Adam Kleinberg
    Chelsea Weisbord

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS/PROCEDURAL HISTORY ............................................................. 3

ARGUMENT ........................................................................................................................... 14

   I.   The Court Should Dismiss The Supremacy Clause Claim ................................................ 14

   II.   Plaintiff Fails To State A § 1983 Substantive Due Process Claim ................................... 16

   III. Plaintiff Fails To State A Viable Substantive Due Process Claim Under The
New York State Constitution ................................................................................................. 24

   IV.   Plaintiff Fails To State A Viable Claim Under The Separation Of Powers Doctrine ....... 25

   V.   Plaintiff's Failure To Accommodate Claims Under The Americans With Disabilities
Act And Section 504 Of The Rehabilitation Act Are Barred Based On Her Failure To Exhaust
Administrative Remedies ........................................................................................................ 26

   VI.   The Court Should Dismiss Plaintiff's NYSHRL Claim Based On Plaintiff's Failure To
Serve A Notice Of Claim ....................................................................................................... 30

CONCLUSION ........................................................................................................................ 30

**Cases**                                                                                                    **Page(s)**

*Alleyne v. New York State Educ. Dep't,*
   691 F. Supp. 2d 322 (N.D.N.Y. 2010) ............................................................. 21, 22

*Alwan v. City Of New York,*
   311 F. Supp. 3d 570 (E.D.N.Y. 2018) ................................................................... 25

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ............................................................................................... 14

*Bazadier v. McAlary,*
   2010 WL 11507356, (N.D.N.Y. 2010) ................................................................. 22

*Bazadier v. Mcalary,*
   2010 WL 11507356 (N.D.N.Y. 2010) ................................................................... 22

*Bridges v. Houston Methodist Hosp.,*
   2021 WL 2399994 (S.D. Tex. June 12, 2021) ...................................................... 16

*Bryant v. New York State Educ. Dep't,*
   692 F.3d 202 (2d Cir. 2012) ........................................................................... 20, 21

*Buckman Co. v. Plaintiffs' Legal Comm.,*
   531 U.S. 341 (2001) ............................................................................................... 15

*Calvary Chapel Dayton Valley v. Sisolak,*
   140 S. Ct. 2603 (2020) ........................................................................................... 18

*Camac v. Long Beach City Sch. Dist.,*
   2011 WL 3030345 (E.D.N.Y. July 22, 2011) ................................................. 27, 29

*Cave v. East Meadow Union Free Sch. Dist.,*
   514 F.3d 240 (2d Cir. 2008) ........................................................................... 28, 29

*Columbus Ale House, Inc. v. Cuomo,*
   495 F. Supp. 3d 88 (E.D.N.Y. 2020) ................................................................... 18

*Denis v. Ige,*
   2021 WL 1911884 (D. Hawaii May 12, 2021) ............................................... 21, 23

*Doe v. Zucker,*
   2021 WL 619465 (N.D.N.Y. Feb. 17, 2021) ............................................. 19, 20, 21

*Forbes v. Cty. Of San Diego*,
  2021 WL 843175 (S.D. Cal. Mar. 4, 2021) .................................................................... 21, 23

*Freedom Holdings, Inc. v. Cuomo*,
  624 F.3d 38 (2d Cir. 2010) ........................................................................................... 22

*Frei v. Taro Pharm. U.S.A., Inc.*,
  844 F. App'x 444 (2d Cir. 2021) .................................................................................. 15

*Frei v. Taro Pharms. U.S.A., Inc.*,
  443 F. Supp. 3d 456 (S.D.N.Y. 2020) .......................................................................... 15

*G.D.S. Ex Rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*,
  915 F. Supp. 2d 268 (E.D.N.Y. 2012) .......................................................................... 24

*Gary D. Peake Excavating Inc. v. Town Bd. Of Town Hancock*,
  93 F.3d 68 (2d Cir. 1996) ............................................................................................. 22

*Gloria E. Johns-Khan v. Westbury Board Of Education -Pless-Dickerson*,
  2022 WL 280646 (E.D.N.Y. Jan. 31, 2022) .................................................................. 30

*Heller v. Doe By Doe*,
  509 U.S. 312 (1993) ................................................................................................ 22, 24

*Hope v. Cortines*,
  872 F. Supp. 14 (E.D.N.Y.1995) .................................................................................. 30

*Hopkins Hawley Llc v. Cuomo*,
  2021 WL 465437 (S.D.N.Y. Feb. 9, 2021) ................................................................... 23

*Immediato v. Rye Neck Sch. Dist.*,
  73 F.3d 454 (2d Cir. 1996) ..................................................................................... 19, 22

*In Re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) .......................................................................... 15

*J.S. Ex Rel. N.S. v. Attica Cent. Sch.*,
  386 F.3d 107 (2d Cir. 2004) ......................................................................................... 27

*J.Z. v. New York City Dep't Of Educ.*,
  281 F. Supp. 3d 352 (S.D.N.Y. 2017) .......................................................................... 28

*Jacobson v. Massachusetts*,
  197 U.S. 11 (1905) ............................................................................................ 17, 18, 23

iii

*Kelly v. Imagineif Libr. Entity*,
    2021 WL 2444663 (D. Mont. June 15, 2021) ........................................ 20

*L.K. v. Sewanhaka Cent. High Sch. Dist.*,
    2015 WL 12964663 (E.D.N.Y. July 16, 2015) ..................................... 28

*Leadingage New York, Inc. v. Shah*,
    32 N.Y.3d 249 (2018) .......................................................................... 26

*League Of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
    814 F. App'x 125 (6th Cir. 2020) ....................................................... 18

*Lebanon Valley Auto Racing Corp. v. Cuomo*,
    478 F. Supp. 3d 389 (N.D.N.Y. 2020) ............................................... 18

*Leebaert v. Harrington*,
    332 F.3d 134 (2d Cir. 2003) ........................................................... 19, 22

*Luke's Catering Serv., Llc v. Cuomo*,
    485 F. Supp. 3d 369 (W.D.N.Y. 2020) ........................................... 18, 23

*Marino v. City Univ. Of New York*,
    18 F. Supp. 3d 320 (E.D.N.Y. 2014) .................................................. 20

*Martinez v. New York City Dep't Of Educ.*,
    2018 WL 4054872 (E.D.N.Y. Aug. 24, 2018) ................................... 29

*Mb v. Islip Sch. Dist.*,
    2015 WL 3756875 (E.D.N.Y. June 16, 2015) ................................... 28

*Mccarthy v. Cuomo*,
    2020 WL 3286530 (E.D.N.Y. June 18, 2020) ................................... 18

*Merrell Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986) ............................................................................ 15

*Miller v. French*,
    530 U.S. 327 (2000) ............................................................................ 25

*Morales v. City Of New York*,
    752 F.3d 234 (2d Cir. 2014) ............................................................... 16

*Nelson v. Mount Vernon City Sch. Dist.*,
    2017 WL 1102668 (S.D.N.Y. 2017) ................................................... 30

*New York State Trawlers Ass'n v. Jorling*,
    16 F.3d 1303 (2d Cir. 1994) ........................................................... 22

*Oakes v. Collier Cty.*,
    2021 WL 268387 (M.D. Fla. Jan. 27, 2021) ................................ 23

*Oberheim v. Bason*,
    2021 WL 4478333 (M.D. Pa. Sept. 30, 2021) .............................. 19

*P.J.E.S. By & Through Escobar Francisco v. Wolf*,
    502 F. Supp. 3d 492 (D.D.C. 2020) .............................................. 24

*Phillips v. City Of New York*,
    775 F.3d 538 (2d Cir. 2015) ................................................. 17, 21

*Planned Parenthood Of Se. Pennsylvania v. Casey*,
    505 U.S. 833 (1992) ......................................................................... 20

*Polera v. Bd. Of Educ. Of Newburgh Enlarged City Sch. Dist.*,
    288 F.3d 478 (2d Cir. 2002) ...............................26, 27, 28, 30

*Ryan Klassen, Et Al., v. The Trustees of Indiana University,*
    2021 WL 3025893, (N.D. Ind. July 18, 2021) ........................... 19

*S.G. v. Success Acad. Charter Sch., Inc.*,
    2019 WL 1284280 (S.D.N.Y. Mar. 20, 2019) ............................. 29

*Scaggs v. New York Dep't Of Educ.*,
    2007 WL 1456221 (E.D.N.Y. May 16, 2007) ....................... 27, 28

*Smith v. Guilford Bd. Of Educ.*,
    226 F. App'x 58 (2d Cir. 2007) ..................................................... 20

*Smith v. Potter*,
    187 F.Supp.2d 93 (S.D.N.Y. 2001) ............................................... 23

*Stropkay v. Garden City Union Free Sch. Dist.*,
    593 F. App'x 37 (2d Cir. 2014) .................................... 27, 28

*United States v. James*,
    2020 WL 6081501 (D. Ariz. Oct. 15, 2020) ................................ 23

*United States v. Kelly*,
    2020 WL 2746001 (E.D.N.Y. May 22, 2020) ............................. 22

*W.S. By Sonderman v. Ragsdale,*
  2021 Wl 2024687 (N.D. Ga. May 12, 2021) ............................................ 21

*Whitfield v. Cuyahoga County Public Library Foundation,*
  2021 WL 1964360 (N.D. Ohio May 17, 2021) ................................. 20, 23

*Whittle v. Ulloa,*
  2016 WL 7351895 (S.D.N.Y. 2016) ......................................................... 25

*Young v. James,*
  2020 WL 6572798 (S.D.N.Y. Oct. 26, 2020) .......................................... 17

*Zucht v. King,*
  260 U.S. 174 (1922) ........................................................................... 17, 23

**Statutes**

20 U.S.C. § 1400 ........................................................................................ 26

20 U.S.C. § 1415 .................................................................................. 27, 28

42 U.S.C. § 1983 .......................................................................................... 1

N.Y. Educ. Law § 3813 .......................................................................... 24, 25

N.Y. Educ. Law § 4404 ............................................................................... 27

N.Y. Pub. Health Law § 2805 ..................................................................... 25

**Rules**

Fed. R. Civ. P. 11 ........................................................................................ 16

Fed. R. Civ. P. 12 ........................................................................................ 12

**Regulations**

8 N.Y.C.R.R. § 200.5 .................................................................................. 27

10 N.Y.C.R.R. § 2.61 ................................................................................... 6

21 C.F.R. § 50 ............................................................................................ 16

# PRELIMINARY STATEMENT

The State of New York implemented various regulations in an attempt to combat the spread of COVID-19 and protect the health and safety of its citizens. Like all New York public school districts, the Franklin Square Union Free School District (the "District") was permitted to reopen its doors to in-person learning for the 2020-2021 school year if it complied with the guidance and requirements issued by the New York State Department of Health ("NYSDOH"). The District had to create and enforce a reopening plan that complied with State-mandated guidance. This included imposing a face covering requirement for students, faculty, and staff.

In August of 2021, the NYSDOH instituted the face covering requirement for the 2021-2022 school year. Plaintiff, Jane Doe, on behalf of her daughter, Sarah Doe, challenges the validity of the State-mandated face covering requirement. She also challenges the District's denials of her request that Sarah be exempted from the requirement.

The District played no role in drafting or enacting the NYSDOH's guidance or regulations. As such, no claim can lie against the District for the implementation of this requirement.

Nonetheless, Plaintiff fails to state any viable claims against the District. The Court should dismiss Plaintiff's request for a declaratory judgment that the mask mandate violates the Supremacy Clause because the Supremacy Clause does not provide a private right of action.

The Court should dismiss Plaintiff's substantive due process claim under 42 U.S.C. § 1983 because: (1) Plaintiff's constitutional challenge is barred by the U.S. Supreme Court's holding in *Jacobson v. Massachusetts*, which provided great deference to states to enact emergency public health measures during an epidemic of disease such as COVID-19; (2) Plaintiff fails to assert a fundamental, constitutionally protected right, and therefore, rational basis review applies; (3) New York's mask mandate survives rational basis review as does the District's mask requirements

which were implemented to comply with State-mandated guidelines and regulations and were also based on the State's legitimate public health reasons.

Plaintiff's substantive due process claim under the New York State Constitution must also be dismissed. It is barred by Plaintiff's failure to serve a notice of claim, as required by Under New York Education Law § 3813. The claim is also barred because the New York State Constitution provides no private cause of action where an alternative remedy exists under federal law.

Furthermore, the Court should dismiss Plaintiff's claim under the separation of powers doctrine because the State's mask mandate does not violate the doctrine. Even if Plaintiff could somehow demonstrate the State violated the separation of powers doctrine by issuing a mask mandate (which she cannot), there is no basis for Plaintiff's proposition that the District somehow violated the separation of powers doctrine by complying with the law.

Finally, Plaintiff's newly-pled failure to accommodate claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") should die on the vine. Plaintiff's failure to exhaust her administrative remedies (i.e., have a hearing before an impartial hearing officer and then appeal that decision to the State) is a bar to these claims as it deprives this Court of subject matter jurisdiction over them.

For the reasons set forth in this memorandum of law, and in this Court's October 26, 2021 Memorandum and Order, the Court should grant the District's motion to dismiss the Amended Complaint, and accordingly grant a judgment in the District's favor.

**STATEMENT OF FACTS[1]/PROCEDURAL HISTORY**

**A. New York State's Response to the Covid-19 Pandemic**

On or about March 7, 2020, then-New York Governor Andrew Cuomo issued Executive Order No. 202 which declared "a State disaster emergency for the entire State of New York." (Ex. B.) On March 16, 2020, Governor Cuomo issued Executive Order 202.4 in which he ordered all schools to close no later than March 18, 2020. (Ex. C.) Through various subsequent Executive Orders, Governor Cuomo extended the closure of school facilities and in-person instruction through the remainder of the 2019-2020 school year. (Ex. D, p. 7.)

Throughout the 2020-2021 school year, the NYSDOH issued emergency guidance that required face masks to be worn in schools. (Ex. A, ¶ 22.) The first of these was released by the NYSDOH on August 26, 2020 and is entitled "*Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools During the COVID-19 Public Health Emergency*" ("Interim Guidance"). (Ex. D.) The stated purpose for the Interim Guidance was to "provide all elementary (including pre-kindergarten), middle, and high schools, as well as their employees, contractors, students, and parents/legal guardians of students with precautions to help protect against the spread of COVID-19 for schools that are authorized to provide in-person instruction in the 2020-2021 school year." (*Id.*, p. 1.) The Interim Guidance required schools to develop individual plans for reopening and operating during the COVID-19 public health emergency and submit those plans to the NYSDOH and the New York State Education Department ("NYSED"). (*Id.*) The Interim Guidance set forth a list of minimum standards, or requirements, for such plans. One of these requirements was that schools "must maintain protocols and procedures for students, faculty, staff, and other individuals to ensure appropriate personal protective equipment (PPE) is used to protect against the

---

[1] The facts taken directly from Plaintiff's Amended Complaint are accepted as true for purposes of this motion only.

3

transmission of the COVID-19 virus when on school grounds and in school facilities." (*Id.*, pp. 1-2; *see also* pp. 4, 10-11, 14-15.) The Interim Guidance further explained, "These guidelines are based on the best-known public health practices at the time of publication." (*Id.*)

On September 4, 2020, Governor Cuomo issued Executive Order 202.60 in which he authorized "schools statewide to be open for instruction, effective September 1, 2020, subject to adherence to Department of Health issued guidance and directives." (Ex. E.)

On April 9, 2021, the NYSDOH issued an update to its August 26, 2020 Interim Guidance for the purpose of aligning the Interim Guidance with the most recent recommendations from the Centers for Disease Control and Prevention ("CDC"). (Ex. F, p. 1.) This updated Interim Guidance continued the requirement that face coverings be worn when on school grounds and in school facilities except during meals. (*Id.*, pp. 2, 4, 9.)

As of May 15, 2021, the CDC still recommended that schools continue using certain COVID-19 prevention strategies for the 2020-2021 school year—including the use of masks. (Ex. G.) The CDC recommended, "All schools should implement and lay prevention strategies and should prioritize universal and correct use of masks and physical distancing." (*Id.*, p. 1.) In a section of the CDC recommendations entitled "Universal and correct use of masks," the CDC recommended the following:

> **Core Principle for masks:** Require consistent and correct use of well-fitting face masks with proper filtration by all students, teachers, and staff to prevent SARS-CoV-2 transmission through respiratory droplets. Masks should be worn at all times, by all people in school facilities, with certain exceptions for certain people, or for certain settings or activities, such as while eating or drinking. Masks should be required in all classroom and non-classroom settings including hallways, school offices, restrooms, gyms, auditoriums, etc. (*Id.*, p. 3.)

The CDC recommendations continued with:

> Most students, including those with disabilities, can tolerate and safely wear a mask. However, a narrow subset of students with disabilities might not be able to

4

wear a mask or cannot safely wear a mask. Those who cannot safely wear a mask—for example, a person with a disability who, for reasons related to the disability, would be physically unable to remove a mask without assistance if breathing becomes obstructed—should not be required to wear one. For the remaining portion of the subset, schools should make individualized determinations as required by Federal disability laws in order to determine if an exception to the mask requirement is necessary and appropriate for a particular student. If a child with a disability cannot wear a mask, maintain physical distance, or adhere to other public health requirements, the student is still entitled to an appropriate education, which in some circumstances may need to be provided virtually. (*Id.*, pp. 3-4.)

On June 7, 2021, the NYSDOH issued another update to its August 26, 2020 Interim Guidance to align it with the most recent recommendations from the CDC. (Ex. H, p. 1.) This updated Interim Guidance no longer required face coverings to be worn outdoors on school grounds, including during outdoor school sports, but still mandated schools to maintain protocols and procedures that require students, faculty, staff, and other individuals to wear face coverings when in indoor school facilities, except for meals. (*Id.*, pp. 2, 4, 9.)

On June 25, 2021, Governor Cuomo issued Executive Order No. 202.10 that officially ended the State disaster emergency he had declared back on March 7, 2020. (Ex. A, ¶ 82; Ex. I.) Also in June, the NYSDOH indicated to the Director of the CDC that it planned to ease mask restrictions to comport with the more lenient recommendations the CDC recommended for summer camp participants. (Ex. A, ¶ 55.)

On August 5, 2021, in response to new evidence on the Delta Covid-19 Variant, the CDC published an updated "Guidance for Covid-19 in K-12 Schools." (Ex J, p. 1.) This CDC guidance was "updated to recommend universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status." (*Id.*, p. 1.)

On August 27, 2021, NYSDOH Commissioner Howard Zucker issued a "Commissioner's Determination on Indoor Masking Pursuant to 10 NYCRR 2.61." (Ex. A, ¶ 3; Ex. K.)[2] This Commissioner's Determination imposes a face covering requirement in various settings including P-12 school settings. (Ex. *K.*) It provides:

> After careful review and consideration of CDC recommendations for face coverings/masks in school settings, I hereby adopt such recommendations, imposing them as requirements, where applicable, until this determination is modified or rescinded. Accordingly, universal masking of teachers, staff, students, and visitors to P-12 schools over age two and able to medically tolerate a face covering/mask and regardless of vaccination status, is required until this determination is modified or rescinded. Such requirement is subject to applicable CDC-recommended exceptions. (*Id.* at p. 2.)

The Commissioner's Determination also sets forth the "findings of necessity" to support the NYSDOH's decision to impose a face covering requirement. (*Id.*, p. 1.) As explained in the Determination, the primary reason for imposing a mask requirement for the 2021-2022 school year is to combat the spread of the Delta COVID-10 variant which "is approximately twice as transmissible as the SARS-CoV-2 strain." (*Id.*)

On September 2, 2021, the NYSDOH issued an "Interim NYSDOH Guidance for Classroom Instruction in P-12 Schools During the 2021-2022 Academic Year" ("the Interim NYSDOH Guidance"). (Ex. K.) The Interim NYSDOH Guidance references the regulatory requirements and associated Commissioner's determinations for masking, COVID-19 testing, and reporting in school settings. (*Id.*, p. 1.) It makes clear that pursuant to the Commissioner's Determination (referenced above), "all students, personnel, teachers, administrators, contractors, and visitors must wear masks at all times indoors, regardless of vaccination status." (*Id.*, p. 2.) The Interim NYSDOH Guidance, however, clarifies that "[p]eople with medical or developmental

---

[2] Three days earlier on August 24, 2021, Kathy Hochul was sworn in as the Governor of New York. She then announced a mask mandate will be in effect from the NYSDOH for the beginning of the 2021-2022 school year.

conditions that prevent them from wearing a mask may be exempted from mask requirements, as documented by a medical doctor. (*Id.*) Additionally, individuals are not required to wear a mask when eating, drinking, singing, or playing a wind instrument, but must practice social distancing (i.e., be spaced six feet apart) when removing their masks for such activities. (*Id.*) The face covering requirement for the 2021-2022 school year does not apply to outdoor play, recess, or physical education activities. (*Id.* at p. 4.)

## B. The District's Compliance with State-Mandated Guidelines and Regulations

In September of 2020, the District reopened its doors for in-person instruction. As required by the NYSDOH guidelines, the District implemented a reopening plan which included protocol and procedures for requiring students, faculty, staff, and other individuals to wear face coverings while in school or on school property. (Ex. M.) The challenges of imposing a face covering requirement did not go unnoticed. As the District stressed in its re-opening plan, "We understand that this will be challenging for all students, including our youngest learners; therefore, frequent mask breaks will be provided throughout the day." (*Id.*, pp. 5-6.) Students in Sarah's age bracket were also given the option to continue remote learning. (*Id.*, p. 6.)

As required by the NYSDOH, the District prepared and published a re-entry plan for the 2021-2022 school year that requires all students and adults to wear a mask inside school buildings and on the school bus. (Ex. N.) The re-entry plan provides:

> Per the Department of Health guidelines, **students and adults must wear a mask at all times inside the buildings (e.g., in classrooms, common areas, and hallways) and on the school bus (e.g., entering, exiting, and seated)**, unless (a) they are medically unable to tolerate one or it would impair their mental health and (b) when eating. Medical documentation is required to qualify for a mask exemption.
>
> **As of June 7, 2021, masks are not required outdoors as long as individuals are maintaining physical distance. Staff, students, and visitors are not required to wear a mask outdoors.** (*Id.*, p. 17 (emphasis in original).)

7

Under this re-entry plan, structured mask breaks are provided to allow students to remove their masks throughout the day, during snack and lunch, while singing or playing a wind instrument, and all outdoor activities. Teachers are required to provide additional mask breaks as needed. (*Id.*, p. 17.)

## C. Plaintiff's Allegations Regarding Her Daughter

Plaintiff Jane Doe is the mother of Sarah, a ten-year old who attends the District's John Street School. (Ex. A, ¶¶ 17.) The Amended Complaint alleges Sarah has asthma and anxiety, which prevent her from being able to medically tolerate a mask. (*Id.*, ¶ 27.)

Sarah was a fifth-grade student at the John Street School during the 2020-2021 school year. (*Id.*, ¶ 25.) The Amended Complaint alleges that as the 2020-2021 school year progressed, it became clear Sarah could not medically tolerate wearing a mask. (*Id.*) Plaintiff alleges she attempted for months to work with the school to provide a reasonable accommodation to her daughter but was unsuccessful. (*Id.*, ¶ 27.) She alleges she was advised to obtain a formal exemption letter from a doctor. (*Id.*, ¶ 39.)

On April 27, 2021, Plaintiff sent the District a doctor's note from Sarah's treating physician, Steven Kellner. (*Id.*, ¶¶ 42, 291; Ex. O.) The doctor's note, which was dated April 12, 2021, indicated Sarah had been diagnosed with asthma and requested she be allowed to play sports without a mask as it triggers her wheezing. (Ex. O.) Plaintiff alleges she received a call from District Superintendent of Schools Dr. Jared Bloom shortly after sending the doctor's note. (Ex. A, ¶ 43.) She claims Dr. Bloom told her Sarah's exemption request was denied and suggested that if Sarah was struggling, she could request a mask break. (*Id.*, ¶¶ 43, 46.)

Plaintiff alleges she called the NYSDOH and the Nassau County local health department and was told neither agency has a policy of reviewing or denying mask exemption requests but the

regulations simply allow students to opt-out if they are having trouble breathing or feel the mask is impairing their physical or mental health. (*Id.*, ¶ 49.)

Plaintiff emailed Dr. Bloom to request that the District's denial of Sarah's medical exemption request be put in writing. (*Id.*, ¶¶ 50, 52.) She claims the District prolonged a written denial, claiming that updated guidelines on masks were expected any day and they may be dropping the mask requirement entirely. (*Id.*, ¶ 53.)

On June 8, 2021, Dr. Bloom sent Plaintiff a letter indicating the District was denying Sarah's medical exemption request based on the opinion of the District's physician, Dr. Marino, who reviewed the request and spoke to Sarah's doctor. (Ex. P; *see also* Ex. A, ¶¶ 58, 292.) Dr. Bloom's June 8th letter further states he confirmed with the Department of Health that the District followed all appropriate protocols and procedures regarding the exemption request. (Ex. P.)

Plaintiff then requested that Sarah be switched to remote learning, but Dr. Bloom responded that he believed remote learning was likely not the best option. (Ex. A, ¶ 66.)

On June 11, 2021, Plaintiff submitted a request that Sarah be placed in a classroom with air conditioning and be allowed to wear a face shield as opposed to a mask. (*Id.*, ¶ 67.) On June 16, 2021, the District's Section 504 Committee denied these accommodation requests. (Ex. A, ¶ 74.) Also on June 16, 2021, attorney Caroline Tucker from the NYC firm Siri & Glimstad LLP sent a letter to Superintendent Bloom which raised concerns regarding Sarah being required to wear a mask in school. (*Id.*, ¶ 79.) Based on the recommendation of District physician Dr. Marino, the District recommended Sarah should visit the nurse's office if she has any difficulty breathing in school so that a licensed health professional could examine her to determine if she was having an asthma episode. (*Id.*, ¶ 75.)

On August 26, 2021, attorney Sujata Gibson of the Gibson Law Firm in Ithaca, NY wrote to Dr. Bloom on behalf of Jane Doe and her family. (*Id.*, ¶ 84; Ex. Ex. Q.) Attorney Gibson's letter enclosed a doctor's note, dated August 24, 2021, from Dr. Kellner requesting that Sarah be exempted from having to wear a mask at school because wearing the mask exacerbates her asthma. (Ex. A, ¶ 84.) In her letter, attorney Gibson threatened to file a lawsuit to "defend [Sarah's] right to a medical exemption." (Ex. Q.)

The Amended Complaint alleges on that August 27, 2021, attorneys for the School District emailed they were waiting for updated guidance from the NYSDOH and would send a response the following week about whether masks would be required and whether Sarah's medical exemption would be accepted or denied. (Ex. A, ¶ 85.)

By letter dated September 2, 2021, District general counsel Michael Vigliotta responded to Ms. Gibson's August 26 letter. (Ex. A, ¶ 86; Ex. R.) He outlined the interactive process to date, Dr. Marino's review of the accommodation request, and Dr. Marino's determination that a complete exemption from the mask mandate was not appropriate under the circumstances. (Ex. R.) In his letter, Vigliotta also reminded attorney Gibson that the CDC has found individuals with asthma can tolerate a mask, and he provided a website link to CDC guidance addressing that issue. (*Id.*) Specifically, he provided a link to an April 7, 2021 document entitled "*CDC Guidance: People with Moderate to Severe Asthma.*" (Ex. A, ¶ 87; Ex. R.)

In this April 7, 2021 publication, the CDC opined people with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19. (Ex. S; *see also* Ex. A, ¶ 87.) The CDC also recommended people with moderate-to-severe or uncontrolled asthma "take steps to protect" themselves. (Ex. S, p. 1.) And according to the CDC, one way they can protect themselves is to "wear a mask" that covers their mouth and nose. (*Id.*) Vigliotta further reiterated

in his September 2 letter that the NYSDOH acted pursuant to its authority to issue regulations to address public health concerns in connection with communicable diseases. (Ex. R.) Finally, Vigliotta reminded Gibson the District must abide by the NYSDOH's regulations and failure to do so could result in fines being imposed against the District. (*Id.*)

In addition to its April 7, 2021 publication, the CDC also addressed asthma in an April 19, 2021 publication entitled "*Guidance for Wearing Masks.*" In this document, the CDC recommended people 2 years of age and older should wear a mask. (Ex. T, p. 2.) While the CDC recognized individuals with certain disabilities may not be able to wear a mask, the CDC does not consider asthma to be one of those disabilities. (*Id.* p. 6.) In fact, the CDC opined, "Most people with underlying medical conditions can and should wear masks." (*Id.*) And the CDC specifically stated, "If you have asthma, you can wear a mask." (*Id.*)

**D. Plaintiff's Federal Complaint and Motion for Injunctive Relief**

On September 7, 2021, Plaintiff filed a federal complaint in which she sued NYSDOH Commissioner Howard Zucker and the District. (Ex. A, ¶ 95; *see also* Dkt. No. 1.) The next day (September 8), Plaintiff moved for a temporary restraining order ("TRO") and preliminary injunction ("PI") prohibiting Defendants from requiring masks for any student who asserts a medical need to opt out of the school mask policies or regulations, or alternatively, prohibiting Defendants from enforcing school mask requirements for Sarah pending resolution of this matter. (Ex. A, ¶ 96; *see also* Dkt. No. 6.) Shortly after filing for relief, Sarah started school for the current 2021-2022 school year. (Ex. A, ¶ 97.)

On September 10, 2021, this Court denied Plaintiff's motion for a TRO, set a briefing schedule for the PI motion, and scheduled an in-person oral argument for September 24, 2021 to discuss the PI motion. (Dkt. No. 8.)

On September 15, 2021, the District filed a pre-motion letter in anticipation of moving to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and (6). (Dkt. No. 13). Later that day, the Court issued an Electronic Order granting the District's request for a pre-motion conference and indicating the application would be discussed at the in-person oral argument already scheduled for September 24, 2021. (*See* September 15, 2021 Electronic Order.)

On September 23, 2021, co-defendant Howard Zucker filed his own pre-motion letter in anticipation of moving to dismiss the Complaint. (Dkt. No. 20.) The Court issued an Electronic Order granting Zucker's request for a pre-motion conference and indicating the application would be discussed at the September 24 oral argument. (*See* September 23, 2021 Electronic Order.)

On September 24, 2021, the Court held oral argument where Plaintiff's PI motion and Defendants' anticipated motions to dismiss were discussed. (*See* September 24, 2021 Electronic Minute Entry.) The Court issued a Minute Entry summarizing the oral argument as follows: "After hearing from all the parties the Court will issue an order denying the motion for a preliminary injunction and allow the plaintiff to amend her complaint in 2 weeks to add an ADA claim. The plaintiff will pursue an appeal on Courts order denying her preliminary injunction application. Once an amended complaint is served and file[d] the defendants may re-new their applications for a pre-motion conference as to their motions to dismiss." (*Id.*) Plaintiff did not amend.

On October 8, 2021, the Court scheduled a hearing for "for further discussion on the merits of the case." (*See* October 8, 2021 Electronic Order.) On October 15, 2021, the parties appeared for that hearing and continued to discuss Plaintiff's PI motion. The Court then scheduled a factual hearing for October 22, 2021. (*See* October 15, 2021 Electronic Order.)

On October 18, 2021, Plaintiff's counsel, with Defendants' consent, wrote to the Court requesting an adjournment of the factual hearing scheduled for October 22. (Dkt. No. 25.) In this

letter, Plaintiff's counsel explained the parties are discussing a potential global resolution of the case and in the meantime would try an accommodation offered through the 504 process that may be an acceptable solution for the District and the child going forward. (*Id.*) Plaintiff's counsel asked the Court to remove the factual hearing from the Court's calendar and set a control date of November 3, 2021 "at which time the parties should know and be able to alert the Court whether the hearing needs to be placed back on the Calendar or if the matter can be resolved in whole or in part." (*Id.*) In response, the Court cancelled the factual hearing scheduled for October 22, 2021 and re-scheduled it for November 3. (*See* October 18, 2021 Electronic Order.)

The accommodation referenced in Plaintiff's October 18 letter references the District's decision to accommodate Sarah by allowing her to wear a mesh mask in school. (Ex. A, ¶ 214.)

On October 26, 2021—after Plaintiff's PI motion was fully briefed and the parties appeared for oral argument—this Court issued a Memorandum and Order denying Plaintiff's request for a preliminary injunction. (Dkt. No. 26.) The Court determined Plaintiff's constitutional claims are not likely to succeed on the merits. (*Id.*) In its October 26, 2021 decision, the Court also "deemed the Complaint amended to assert to state claims: (1) for failure of the school district to afford her a 'medical tolerance' exemption; (2) for failure of the school district to comply with the ADA." (Dkt. No. 26, p. 48.) However, the issuance of preliminary injunctive relief on these state claims— which appeared nowhere in the Complaint—were held in abeyance pending the resolution of the parties' settlement negotiations. (*Id.*)

On November 3, 2021, the parties appeared for a court conference via telephone. During this conference, the Court denied a request from Plaintiff to stay the case pending the interlocutory appeal. (*See* November 3, 2021 Minute Entry.) The Court also granted Defendants' application to file a motion to dismiss and directed the parties to file an agreed upon briefing schedule by

November 10, 2021. (*Id.*) Later that day (November 3), the Court issued an Electronic Order stating as follows: "In light of the parties agreement regarding an accommodation, the hearing referenced in the Courts decision of October 26, 2021, is canceled; the accommodation shall remain in effect unless vacated by the Court. However, for the reasons stated on the record, plaintiffs motion for a stay pending appeal is denied." (*See* November 3, 2021 Electronic Order.)

Defendants timely served Plaintiff with their motions to dismiss the Complaint, in accordance with the Court's bundle rule. Rather than submit opposition, Plaintiff instead filed an amended complaint on January 20, 2021 (Ex. A), which is the subject of this motion to dismiss. Now, months after accepting the District's reasonable accommodation to allow Sarah to wear a mesh mask at school, Plaintiff alleges in the Amended Complaint this is "not enough of an accommodation." (*Id.*, ¶¶ 215-16.)

## ARGUMENT

### I.  THE COURT SHOULD DISMISS THE SUPREMACY CLAUSE CLAIM

The Court should dismiss Plaintiff's request for a declaratory judgment that the mask mandate violates the Supremacy Clause (First Cause of Action). The Court, in its October 26, 2021 decision, found this claim to be "without merit" because there is no private right of action under the Supremacy Clause (Dkt. No. 26, pp. 47-48.) Nothing in the Amended Complaint changes this.

Plaintiff still cannot maintain a claim under the Supremacy Clause because the allegations in the Amended Complaint, even if true, cannot raise a claim of entitlement to relief. This is because the Supremacy Clause "is not the source of any federal rights and "certainly does not create a cause of action." *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). Rather, it "instructs courts what to do when state and federal laws clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.*

The statutes and regulations to which Plaintiff cites do not give rise to a cause of action against the District. While Plaintiff alleges a violation of Section 360bbb-3 of the Federal Food, Drug, and Cosmetic Act ("FDCA"), there is no private right of action under that statute. *See Frei v. Taro Pharms. U.S.A., Inc.*, 443 F. Supp. 3d 456, 468 (S.D.N.Y. 2020) ("[T]he FDCA does not provide a private right of action for a defendant's violation of its provisions.") (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)), *aff'd sub nom. Frei v. Taro Pharm. U.S.A., Inc.,* 844 F. App'x 444 (2d Cir. 2021); *In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 362 (E.D.N.Y. 2010) (FDCA does not provide a private cause of action). Only the United States itself can file a suit challenging an FDCA violation. *See Frei*, 443 F. Supp. 3d at 468 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349, n. 4 (2001)). Since Plaintiff is a private litigant, and not the Federal Government, she has no standing to file suit for an alleged violation of the FDCA. This Court has already held Plaintiff has no private right of action under Section 564 of the FCDA. (Dkt. No. 26, p. 48.)

Here, Plaintiff claims her daughter, Sarah, is being subjected to "human experimentation" by having to wear a mask in school without informed consent. This argument is semantics and not based in law. It is a manufactured attempt to shoehorn a claim where none exists. It should be rejected. There is simply no existing case law, binding, persuasive, or otherwise, to support Plaintiff's proposition that a face mask requirement violates the FDCA and must be voluntary for students like Sarah. As this Court held in its October 26, 2021 decision, "[t]he Mast Mandate is not an experiment or clinical trial; it is a school safety measure" and "[r]ecasting it as an unlawful human experiment is an irrational leap of logic." (Dkt. No. 26, p. 48.)

Plaintiff also references the Nazi experimentation that took place during the Holocaust. To the extent she is suggesting the State's mask mandate is somehow similar to Nazi experimentation

(which seems to be the contention), as the court held in *Bridges*, such an argument would be "reprehensible." *Bridges v. Houston Methodist Hosp.*, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021). Plaintiff's reference to Nazi experimentation left the same bitter taste in this Court's mouth. In its October 26, 2021 decision, the Court wrote, "The Complaint regrettably equates the Mask Mandate to the Nazi experiments. Plaintiff's counsel is admonished to avoid such irrational and incendiary language. *See* Fed. R. Civ. P. 11." (Dkt. No. 26, p. 48, n. 24.) Despite this stern warning from the Court, the Amended Complaint continues to equate the Mask Mandate to Nazi experiments, which raises Rule 11 concerns. And the Amended Complaint includes another irrational leap of logic equating the Mask Mandate to a prison's use of masks "as a form of torture … to isolate prisoners form one another and to dehumanize them." (Ex. A, ¶ 154.)

Plaintiff also alleges a violation of 21 C.F.R. § 50.1, but that statute is inapplicable. That regulation only applies to "clinical investigations," which is defined as "any experiment that involves a test article and one or more human subjects…" 21 C.F.R. §§ 50.1(a), 50.3(c). There was no clinical investigation here, and the Amended Complaint does not logically allege otherwise.

Plaintiff's Supremacy Clause claim simply has no merit; it should be dismissed.

## II.   PLAINTIFF FAILS TO STATE A § 1983 SUBSTANTIVE DUE PROCESS CLAIM

This Court should dismiss Plaintiff's *Monell* claim against the District (Second Cause of Action) because she has not demonstrated the District violated Sarah's substantive due process rights, and there can be no *Monell* claim absent an underlying constitutional violation. *See Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014).

*First*, Plaintiff's constitutional challenge to New York's mask mandate is barred by the U.S. Supreme Court's 1905 holding in *Jacobson v. Massachusetts*, which vests state and local governments—not the courts—with the police power to address pandemics such as COVID-19.

"More than 100 years ago, the Supreme Court held that a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Young v. James*, 2020 WL 6572798, at *3 (S.D.N.Y. Oct. 26, 2020) (internal quotations omitted) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905)), *appeal dismissed* (2d Cir. 2021). In *Jacobson v. Commonwealth of Massachusetts*, a plaintiff unsuccessfully challenged a compulsory vaccination requirement by claiming it violated substantive due process rights. *See* 197 U.S. 11 (1905). "The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (*citing Jacobson*, 197 U.S. at 37-38.) Determinations about the alleged harm caused by vaccines was "a determination for the legislature, not the individual objectors." *Id*.

Seventeen years later, in 1922, the U.S. Supreme Court relied on its holdings in *Jacobson* in rejecting another challenge to mandatory vaccination requirements for public school students. *See Zucht v. King*, 260 U.S. 174 (1922). In *Zucht*, the Supreme Court reiterated "a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative." *Zucht*, 260 U.S. at 176. The Supreme Court further held "the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law." *Id*.

And deference shown under *Jacobson*, while not limitless, is very broad, especially in the midst of a public health crisis. Under *Jacobson*, "the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crises and are not 'beyond all question, a plain, palpable

invasion of rights secured by the fundamental law.'" *Columbus Ale House, Inc. v. Cuomo*, 495 F. Supp. 3d 88, 92 (E.D.N.Y. 2020) (quoting *Jacobson*, 197 U.S. at 38).

Here, New York's mask mandate is subject to *Jacobson* review. *See Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020) ("In the context of the current pandemic, *Jacobson* has been called the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to emergency public health measures.") (collecting cases); *Luke's Catering Serv., LLC v. Cuomo,* 485 F. Supp. 3d 369, 381 (W.D.N.Y. 2020); (holding New York State's chosen response to COVID-19 is "entitled to deference" under *Jacobson*).

Courts across the country, including the U.S. Supreme Court, have held mask mandates satisfy *Jacobson* standard of review. In fact, "[a]ll agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 127 (6th Cir. 2020) (citing *Jacobson*, 197 U.S. 11); *Luke's Catering Serv., LLC,* 485 F. Supp. 3d at 380 ("States undoubtedly have a compelling interest in combating the spread of COVID-19 and protecting the health of their citizens.") (citation omitted); *McCarthy v. Cuomo*, 2020 WL 3286530, at *3 (E.D.N.Y. June 18, 2020) ("A community has the right to protect itself against an epidemic of disease which threatens the safety of its members.") (citation omitted).

In 2020, the U.S. Supreme Court reaffirmed the broad power of states to enact measures to protect the public health from COVID-19 and made clear that courts should not be second-guessing such decisions. *See Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2614 (2020) ("Under the Constitution, state and local governments, not the federal courts, have the primary responsibility for addressing COVID-19 matters such as quarantine requirements, testing

plans, mask mandates, phased reopenings, school closures, sports rules, adjustment of voting and election procedures, state court and correctional institution practices, and the like.")

Whether or not Plaintiff agrees with New York's decision to continue to require masks in school buildings, it is undeniable that New York's decision is intended to protect the public health and public safety and courts will afford great deference to such determinations.

**Second**, the due process claim should also be dismissed based on Plaintiff's failure to assert a fundamental, constitutionally-protected right.

In assessing whether a governmental regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is fundamental. *See Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003). "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in the Nation's history and tradition." *Id.* Strict scrutiny applies to the challenged governmental regulation only when the right infringed is "fundamental." *Id.* But "[w]here the claimed right is not fundamental, rational basis review is applied and the governmental regulation need only be reasonably related to a legitimate state objective. *See Doe v. Zucker*, 2021 WL 619465, at *20 (N.D.N.Y. Feb. 17, 2021) (quoting *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996)).

None of the rights identified in the Amended Complaint are the type of fundamental rights that trigger strict scrutiny. Plaintiff's daughter does not have a constitutional right to refuse to wear a face mask. *See Oberheim v. Bason*, 2021 WL 4478333, at *7 (M.D. Pa. Sept. 30, 2021) (holding students do not have a fundamental right to attend class without a mask and a mask mandate in schools does not infringe on a parent's fundamental right to raise their children without undue state influence); *Ryan Klassen, et al., v. The Trustees of Indiana University,* 2021 WL 3025893, at *38 (N.D. Ind. July 18, 2021) (holding there is no fundamental constitutional right to not wear a mask);

*Whitfield v. Cuyahoga County Public Library Foundation*, 2021 WL 1964360, at * 2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *see also Kelly v. Imagineif Libr. Entity*, 2021 WL 2444663, at *1 (D. Mont. June 15, 2021) (dismissing plaintiff's constitutional challenge of library's COVID-19-related face mask requirements as "there is no general constitutional right to wear, or to refuse to wear a face mask in public places," and "federal, state and local governments may govern what must be worn in public places, particularly when the health and safety of the general public are at issue").

Nor does Plaintiff's daughter have a fundamental, constitutional right to receive an education. *See Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 61 (2d Cir. 2007) (holding education "is not among the rights afforded explicit protection under our Federal Constitution"); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) ("The right to public education is not fundamental; accordingly, there is no substantive due process right to public education.") (quoting *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012)).

As for Plaintiff's assertion that her daughter has a fundamental right to informed consent and "to be free from forced medical experimentation," no such right exists in the context of a mask mandate, which is why Plaintiff has to resort to citing an incompatible line of abortion cases. But the holdings in those cases do not apply here for a very obvious reason: this is not an abortion case. Those cases applied strict scrutiny because it is black letter law that the right to abortion is "fundamental" under the Due Process Clause of the Fourteenth Amendment. *See Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 953 (1992). While abortion may be a fundamental right, the rights identified in the Complaint are not. In *Doe v. Zucker,* the same attorney representing Plaintiff in the instant case pressed the same abortion argument in the context

of New York's compulsory vaccination law in schools. The court, in *Doe v. Zucker*, articulated the difference between that case and an abortion case:

> [U]nlike the medical exemption cases involving abortion, where the denial of an exemption may endanger the life or health of the mother, here, if a medical exemption is denied and the parent continues to believe that vaccinating the child will endanger his or her health, the parent may forgo vaccination and homeschool their child. Therefore, the medical exemption at issue here does not directly implicate the same "unnecessary risk of tragic health consequences" that drives the abortion medical exemption jurisprudence.

*Doe v. Zucker*, 2021 WL 619465, at *22. This holding applies perfectly to this case. If anything, a mask requirement is even less similar to an abortion-case than a vaccine requirement.

With no fundamental constitutional right at stake, Plaintiff's substantive due process claim fails regardless of the standard of review. *See Phillips v. City of New York*, 775 F.3d 538, 543 n.5 (2d Cir. 2015) ("[b]ecause there is no substantive due process right to a public education, plaintiffs' substantive due process claim fails even under a strict scrutiny test") (quoting *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012)).

Even if subject to judicial scrutiny, with no fundamental right at stake, rational basis review (not strict scrutiny) applies. *See Alleyne v. New York State Educ. Dep't*, 691 F. Supp. 2d 322, 336 (N.D.N.Y. 2010); *see also Denis v. Ige*, 2021 WL 1911884, at *1 (D. Hawaii May 12, 2021) (applying rational basis review to mask mandate); *Forbes v. Cty. of San Diego*, 2021 WL 843175, at *1 (S.D. Cal. Mar. 4, 2021) (holding if *Jacobson* did not apply to substantive due process claim challenging mask mandate, court would apply rational basis review); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) (applying rational basis review to rule requiring students to wear face masks on campus).

**Third**, the due process claim fails because the make mandate undoubtedly survives rational basis review.

Under the rational basis review standard, the challenged governmental regulation is afforded a strong presumption of validity and need only be reasonably related to a legitimate state objective to survive constitutional review. *See Alleyne*, 691 F. Supp. 2d at 336; *Leebaert*, 332 F.3d at 140 (citing *Immediato*, 73 F.3d at 461); *see also Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.") (collecting cases).

"[C]ourts are compelled under rational basis review to accept a State's generalizations even when there is an imperfect fit between means and ends." *Bazadier v. McAlary*, 2010 WL 11507356, at *4 (N.D.N.Y. 2010) (citation omitted) (quoting *Heller*, 509 U.S. at 321), *aff'd*, 464 F. App'x 11 (2d Cir. 2012)). "A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* A governmental regulation fails under rational basis review only when it "rests on grounds wholly irrelevant to the achievement of the State's objective." *Heller*, 509 U.S. at 319 (collecting cases); *Bazadier*, 2010 WL 11507356, at *4 (citation omitted).

Here, there can be no doubt New York's mask mandate survives rational basis review because it is reasonably related to a legitimate state objective: ensuring the safety of all students, teachers, and visitors on school grounds by curbing the spread of COVID-19. It is well-settled public health is a legitimate state interest. *See Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 45, n. 8 (2d Cir. 2010) ("promoting public health" is a legitimate state interest); *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1311 (2d Cir. 1994) (legitimate state interests include "the public health, safety, morals, or general welfare"); *United States v. Kelly*, 2020 WL 2746001, at *7 (E.D.N.Y. May 22, 2020) ("Legislation pertaining to public health and safety consistently has been recognized as an important local interest.") (citing *Gary D. Peake Excavating Inc. v.*

*Town Bd. of Town Hancock*, 93 F.3d 68, 76 (2d Cir. 1996)). These legitimate state interests fall well within the State's police powers. *See Zucht*, 260 U.S. at 176; *Jacobson*, 197 U.S. at 25.

And mask mandates have been found to be a compelling government interest. *See e.g., Whitfield*, 2021 WL 1964360, at *2 ("Wearing a face mask in the time of a global pandemic is a matter of public health" and for this reason courts all over this country "have considered the mask requirement and upheld it.") (collecting cases); *Oakes v. Collier Cty.*, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *Forbes*, 2021 WL 843175, at *5 (upholding county's mask mandate under rational basis review because plaintiff's "contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible claim that the rules are not rationally related to a legitimate government interest") (citing *Hopkins Hawley LLC v. Cuomo*, 2021 WL 465437, at *7 (S.D.N.Y. Feb. 9, 2021)); *United States v. James*, 2020 WL 6081501, at *1 (D. Ariz. Oct. 15, 2020) ("The modest sacrifice of donning a face mask mitigates for all trial participants the risk of transmission of a potentially deadly or disabling virus.").

New York's mask mandate in schools also survives rational basis review because it follows the CDC's recommendations. (Ex. G; Ex. J.) Federal courts afford great deference to the role and findings of federal agencies like the CDC. *See Smith v. Potter*, 187 F.Supp.2d 93, 97 (S.D.N.Y. 2001) (holding courts should defer to CDC and should not second-guess scientific judgmental agency that is responsible for protecting public health). Courts have continued to respect, and comply with, this approach during the COVID-19 pandemic. *See Denis*, 2021 WL 1911884, at *9 ("In the midst of a pandemic, it is clearly reasonable for state and local officials to follow the CDC's guidance."); *Luke's Catering Serv., LLC*, 485 F. Supp. 3d at 379 (holding courts are not

permitted "to pass judgment on the wisdom and efficacy of the emergency measures implemented" to protect the public health and public safety during a pandemic and ); *P.J.E.S. by & through Escobar Francisco v. Wolf,* 502 F. Supp. 3d 492, 519 (D.D.C. 2020) (holding "the Court should not substitute its judgment for that of Government officials tasked with ensuring the public health and safety of our Nation") (internal quotations omitted).

The District's conduct should survive rational basis review because the District's implementation of a mask mandate in its school is reasonably related to the State's legitimate interests. The District complied with the State-mandated guidelines and regulations, because the law requires it to do so. And they do so with the same purpose behind the NYSDOH guidelines: to prevent or minimize the spread of COVID-19 and protect the public health of students, faculty, staff, and the public at large. Because Plaintiff cannot show the District's actions were "wholly irrelevant to the achievement of the State's objective," the constitutional challenge cannot survive rational basis review and therefore should be dismissed as a matter of law. *See also Heller*, 509 U.S. at 319 (collecting cases).

This Court has already held the mask mandate survives rational basis review. (Dkt. No. 26, p. 47.) There is simply no basis to stray from this holding.

### III. PLAINTIFF FAILS TO STATE A VIABLE SUBSTANTIVE DUE PROCESS CLAIM UNDER THE NEW YORK STATE CONSTITUTION

The Third Cause of Action, which appears to be a substantive due process claim under the NYS Constitution, fails on several procedural and substantive grounds.

Initially, the claim is barred by Plaintiff's failure to serve a notice of claim. Under New York Education Law § 3813, a notice of claim is a condition precedent to suing a school district or board of cooperative educational services. *See* N.Y. Educ. Law § 3813(1). It applies to state constitutional torts. *See G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915

F. Supp. 2d 268, 280 (E.D.N.Y. 2012). Failure to comply with the notice of claim requirement deprives the court of subject matter jurisdiction and operates as a complete bar to the action. *See Whittle v. Ulloa*, 2016 WL 7351895, at *6 (S.D.N.Y. 2016).

The state constitutional claim is also barred because the NYS Constitution provides no private cause of action where an alternative remedy exists under federal law. *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y. 2018). Since there was an available federal remedy—a remedy Plaintiff pursues in this case—her identical NYS Constitutional claim fails.

Plaintiff's reference to Public Health Law § 2805-d is also a non-starter. Public Health Law § 2805-d confers a right of action to recover for medical, dental, or podiatric malpractice based on a lack of informed consent." N.Y. Pub. Health Law § 2805-d (2). It is limited to "those cases involving either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body." *Id.* Public Health Law § 2805-d simply does not apply here. The type of doctor-patient relationship that gives rise to such malpractice claims does not exist between Plaintiff and her school district.

## IV. PLAINTIFF FAILS TO STATE A VIABLE CLAIM UNDER THE SEPARATION OF POWERS DOCTRINE

Plaintiff seeks a declaratory judgment that the mask mandate violates the separation of powers doctrine under the U.S. Constitution and also the separation of powers clause of the NYS Constitution (Fourth Cause of Action). Plaintiff cannot state a viable claim under either constitution.

The United States Constitution enumerates and separates the powers of the three branches of the federal government in Articles I, II, and III, and it is this very structure of the Constitution that exemplifies the concept of separation of powers." *Miller v. French*, 530 U.S. 327, 341 (2000) (citations and internal quotations omitted). The District is not one of the three branches of the

federal government that the U.S. Constitution seeks to "separate." Therefore, there can be no federal separation of powers claim against the District.

Nor can Plaintiff maintain a separation of powers claim against the District under the NYS Constitution. "The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions." *LeadingAge New York, Inc. v. Shah*, 32 N.Y.3d 249, 259 (2018) (citation omitted). "The principle requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies." *Id*.

The separation of powers doctrine, even under the NYS Constitution, still has nothing to do with the District, which is not one of the three branches of government the doctrine is designed to "separate." Even if the doctrine somehow applies to the District, the claim would still fail because the District did not engage in any conduct that would constitute a separation of powers violation. On the contrary, the District simply complied with State-mandated guidance and regulations by implementing certain policies and procedures, including a mask requirement.

## V. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT ARE BARRED BASED ON HER FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Because Plaintiff's failure to accommodate claims under the ADA and Section 504 of the Rehabilitation Act (Fifth and Sixth Causes of Action) involve the education of a student with disabilities, Plaintiff was required to exhaust her administrative remedies before bringing suit. Her failure to do so deprives this Court of subject matter jurisdiction.

The IDEA requires that disabled students receive a "free appropriate public education" in the "least restrictive appropriate environment." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002); 20 U.S.C. § 1400(d)(1)(A). The statute entitles parents

to "an array of procedural safeguards designed to help ensure the education of their child." *Polera*, 288 F.3d at 482. In New York, these administrative procedures include "an impartial hearing and an appeal of the hearing officer's decision to a state review officer." *Id.* (citing 20 U.S.C. §§ 1415(f), (g); 8 N.Y.C.R.R. § 200.5); *see also J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004) (requiring a review by an impartial due process hearing officer and appeal to a state review officer at the New York State Education Department to exhaust remedies).

One such safeguard provides parents of a disabled student the opportunity to "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education [FAPE] to such child." *Camac v. Long Beach City Sch. Dist.*, 2011 WL 3030345, at *10 (E.D.N.Y. July 22, 2011) (quoting 20 U.S.C. § 1415(b)(6)(A)). Upon receipt of such a complaint, the parents are provided "an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local education agency." *Id.* (quoting 20 U.S.C. § 1415(f)(1)(A); 8 N.Y.C.R.R. § 200.5(i)(1)); N.Y. Educ. Law § 4404(1)). The IDEA further allows an aggrieved party to appeal the decision of the impartial hearing officer to the state review officer. *Id.* (quoting 20 U.S.C. § 1415(g)(1); 8 N.Y.C.R.R. § 200.5(k)(1)); N.Y. Educ. Law § 4404(2)).

Only after all administrative remedies have been fully exhausted may a party commence a federal civil action. *See Camac*, 2011 WL 3030345, at *10 (quoting 20 U.S.C. § 1415(l)); *see also Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 40 (2d Cir. 2014) (It is well settled the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court.) (quoting *J.S. ex rel N.S.,* 386 F.3d at 112); *Scaggs v. New York Dep't of Educ.*, 2007 WL 1456221, at *4 (E.D.N.Y. May 16, 2007) ("It is well-settled that,

prior to bringing a suit in federal court under IDEA, plaintiffs must exhaust all available administrative procedures.") (citing 20 U.S.C. § 1415(*l*) (2006)).

"The purpose of the exhaustion rule is to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *J.Z. v. New York City Dep't of Educ.*, 281 F. Supp. 3d 352, 356 (S.D.N.Y. 2017) (quoting *Cave v. East Meadow Union Free Sch. Dist.,* 514 F.3d 240, 245-246 (2d Cir. 2008). "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera*, 288 F.3d at 483; *see also Stropkay*, 593 F. App'x at 40 (quoting *Cave,* 514 F.3d at 245); *Scaggs*, 2007 WL 1456221, at *4.

Although Plaintiff does not expressly advance any cause of action under the IDEA, "the statute extends the exhaustion requirement to actions 'under such laws seeking relief that is also available under this subchapter.'" *Stropkay*, 593 F. App'x at 40 (quoting 20 U.S.C. § 1415(l)). In fact, the Second Circuit has held where a plaintiff raises "grievances related to the education of disabled children, they are obligated to exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)." *Id.* (citing *Polera v*, 288 F.3d at 481); *see also L.K. v. Sewanhaka Cent. High Sch. Dist.,* 2015 WL 12964663, at *8 (E.D.N.Y. July 16, 2015) (citing *Cave v.*, 514 F.3d at 245, n. 2), *aff'd*, 641 F. App'x 56 (2d Cir. 2016).

"[E]ducation, as used within the IDEA, encompasses more than simply academics." *Stropkay*, 593 F. App'x at 40 (quoting *Cave*, 514 F.3d at 248). Where "plaintiffs' claims constitute grievances related to the education of disabled children, they are subject to the IDEA's exhaustion requirements." *MB v. Islip Sch. Dist.*, 2015 WL 3756875, at *7 (E.D.N.Y. June 16, 2015) (citations omitted). Courts routinely apply the IDEA's the exhaustion requirements to failure to

accommodate claims. *See Martinez v. New York City Dep't of Educ.*, 2018 WL 4054872, at *5 (E.D.N.Y. Aug. 24, 2018) (holding plaintiff's ADA and Section 504 claims alleging a failure to provide a reasonable accommodation for plaintiff's nut allergy were subject to the IDEA's exhaustion requirement"); *Camac v. Long Beach City Sch. Dist.*, 2011 WL 3030345, at *18 (E.D.N.Y. July 22, 2011) (holding IDEA's exhaustion requirement applied to plaintiffs' ADA and Rehabilitation Act claims based on defendants' alleged failure to accommodate Charles's disability"); *S.G. v. Success Acad. Charter Sch., Inc.*, 2019 WL 1284280, at *10 (S.D.N.Y. Mar. 20, 2019) (applying IDEA exhaustion requirement to plaintiff's failure to accommodate claims because such claims "are properly classified as complaints about the adequacy of educational services" and thus "are based on the denial of a FAPE").

Further, "a disabled student who claims deficiencies in her educational program may not bypass the IDEA's administrative exhaustion rule merely by claiming monetary damages." *Cave*, 514 F.3d at 247; *Conway*, 2014 WL 3828383, at *11. Rather, it is "the theory behind the grievance" that triggers the exhaustion requirement, "even if the plaintiff wants a form of relief that the IDEA does not supply." *Baldessarre*, 496 F. App'x at 133 (citation omitted).

The Amended Complaint alleges Defendants' "failure to accommodate Sarah's disability has deprived Sarah of her right to an education as a person with a disability." (Ex. A, ¶ 311.) By this text, Plaintiff's ADA and Section 504 claims are based on Defendants' alleged failure to provide Sarah with a FAPE. Accordingly, these claims are subject to the IDEA's exhaustion requirements. Plaintiff's failure to exhaust her administrative remedies strips this Court of subject matter jurisdiction, barring the ADA and Section 504 claims as a matter of law.

"Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for

damages." *Id.* at 488. This action is "a textbook example of the types of cases justifying administrative exhaustion," *Hope v. Cortines*, 872 F. Supp. 14, 21 (E.D.N.Y.1995), *aff'd*, 69 F.3d 687 (2d Cir. 1995), and should be dismissed.

## VI. THE COURT SHOULD DISMISS PLAINTIFF'S NYSHRL CLAIM BASED ON PLAINTIFF'S FAILURE TO SERVE A NOTICE OF CLAIM

As argued above, a notice of claim is a condition precedent to suing a school district and failure to comply with this requirement deprives the court of subject matter jurisdiction. (*See supra* Point III.) This notice of claim requirement applies to NYSHRL claims. *See Gloria E. Johns-Khan v. Westbury Board of Education -Pless-Dickerson,* 2022 WL 280646, at *8 (E.D.N.Y. Jan. 31, 2022); *Nelson v. Mount Vernon City Sch. Dist.*, 2017 WL 1102668, at *3 (S.D.N.Y. 2017). Accordingly, Plaintiff's NYSHRL claim—like her NYS constitutional claim—is barred by her failure to file a notice of claim.

### CONCLUSION

This Court should dismiss the Amended Complaint in its entirety, together with such other and further relief as this Court may deem just, equitable, and proper.

Dated:  Carle Place, New York
        February 16, 2022

**SOKOLOFF STERN LLP**
*Attorneys for Defendant*
*Franklin Square UFSD*

By:     ADAM I. KLEINBERG
        CHELSEA WEISBORD
